**No. 23-2840**
_____

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
———

**UNITED STATES OF AMERICA,**

Plaintiff-Appellee,

v.

**FELICIANO FELIPE-ZAVALA,**

Defendant-Appellant.

———

Appeal from the
United States District Court
for the Southern District of California
Honorable Michael J. Seng, Presiding Magistrate Judge,
No. 21-MJ-20580-MJS-WQH

———

**APPELLANT'S REPLY BRIEF**
_____

NORA L. STEPHENS
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, CA 92101
(619) 234-8467
Nora_Stephens@fd.org

Attorneys for Mr. Felipe-Zavala

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................iii

INTRODUCTION ................................................................................... 1

ARGUMENT ........................................................................................ 2

I.    Because Mr. Felipe-Zavala experienced a complete deprivation of his right to confidential communication, he does not need to prove that the interference substantially prejudiced him .................................................. 2

    A.    Mr. Felipe-Zavala experienced complete deprivation of his right to confidential communication with his attorney .................................. 3

        i.    Defense counsel took numerous unsuccessful steps to try to meet confidentially with her client ....................................................... 4

        ii.    The magistrate judge's offer for a continuance was an illusory solution ......................................... 7

        iii.    The mere presence of law enforcement violated Mr. Felipe-Zavala's rights by chilling communication, and he therefore did not have to show that the officers intentionally listened in or conveyed information to the prosecutors............................ 10

i

B.    Because Mr. Felipe-Zavala experienced complete deprivation of his right to confidential communication with his attorney, structural error applies ............................................................................ 14

II.    The government also deliberately and prejudicially interfered with Mr. Felipe-Zavala's ability to confer with his counsel and therefore his conferral rights were violated ................................................................................... 20

CONCLUSION ......................................................................... 26

CERTIFICATE OF COMPLIANCE ....................................... 27

# TABLE OF AUTHORITIES

Page(s)

*Arizona v. Fulminante,*
499 U.S. 279 (1991) ............................................................. 3

*Clutchette v. Rushen,*
770 F.2d 1469 (9th Cir. 1985) ........................................ 15

*Geders v. United States,*
425 U.S. 80 (1976) .............................................. 18, 19, 20

*Hayes v. Idaho Corr. Ctr.,*
849 F.3d 1204 (9th Cir. 2017) ...................................... 11

*Hill v. Lockhart,*
474 U.S. 52 (1985) .......................................................... 21

*Jones v. Vacco,*
126 F.3d 408 (2d Cir. 1997) ...................................... 19, 20

*Musladin v. Lamarque,*
555 F.3d 830 (9th Cir. 2009) ........................................ 18

*Nordstrom v. Ryan,*
762 F.3d 903 (9th Cir. 2014) ............................... 11, 13, 15

*Nordstrom v. Ryan,*
856 F.3d 1265 (9th Cir. 2017) ................................. 12, 15

*Perry v. Leeke,*
488 U.S. 272 (1989) .......................................... 18, 19, 20

*Serrano v. Fischer,*
412 F.3d 292 (2d Cir. 2005) .......................................... 19

iii

*Sikousis Legacy, Inc. v. B-Gas Ltd.*,
97 F.4th 622 (9th Cir. 2024) ...................................... 21

*Strickland v. Washington*,
466 U.S. 668 (1984) ................................................ 16

*United States v. Cobb*,
905 F.2d 784 (4th Cir. 1990) .................................... 20

*United States v. Cronic*,
466 U.S. 648 (1984) ............................................ 16, 17

*United States v. Gonzalez-Lopez*,
548 U.S. 140 (2006) ........................... 12, 17, 18, 19

*United States v. Grisel*,
488 F.3d 844 (9th Cir. 2007) .................................... 20

*United States v. Irwin*,
612 F.2d 1182 (9th Cir. 1980) .................................. 15

*United States v. Sandoval-Mendoza*,
472 F.3d 645 (9th Cir. 2006) .................................. 19

*United States v. Stitt*,
586 U.S. 27 (2018) ................................................ 20

*Weatherford v. Bursey*,
429 U.S. 545 (1977) .............................................. 16

*Williams v. Woodford*,
384 F.3d 567 (9th Cir. 2004) .................................. 15

iv

## FEDERAL STATUTES

18 U.S.C. § 3142 ................................................................... 9

## FEDERAL RULES

9th Cir. Rule 32-1 .............................................................. 27

Fed. R. App. P. 32 ............................................................. 27

# INTRODUCTION

The opening brief challenged Mr. Felipe-Zavala's conviction for two reasons. First, his Sixth Amendment right to confidential communication was violated when his only opportunity to talk in his native language of Purépecha with his attorney was in court in the presence of law enforcement. This *total* deprivation of that right constituted a structural error requiring reversal. Second, Mr. Felipe-Zavala's non-confidential conversations with counsel consisted of two brief sessions and violated Mr. Felipe-Zavala's right to confer with counsel. Mr. Felipe-Zavala's inability to properly confer with counsel about his charges, bail options, possible defenses, and rights violated his Sixth Amendment conferral right.

The government contests each point. First, the government claims that Mr. Felipe-Zavala did not suffer a complete deprivation. The government further asserts that structural error does not apply even to complete deprivations of the right to confidential communication. Second, the government argues there was no evidence of deliberate interference with Mr. Felipe-Zavala's confidential relationship with counsel. The government further argues that any such interference did not

1

substantially prejudice Mr. Felipe-Zavala because he failed to accept the judge's proposed remedy of a continuance, and there is no evidence that law enforcement overheard client confidences or communicated them to the prosecutor.

The government's arguments fail. Contrary to the government's claims, Mr. Felipe-Zavala experienced a complete deprivation of his right to confidential communication that constituted a structural error. Further, law enforcement's presence at the meetings with his counsel stripped Mr. Felipe-Zavala of his ability to privately talk with his counsel about possible defenses and bond options. Whether there was a later proposal to continue the proceedings or whether the Marshals overheard the conversations that took place are of no moment.

## ARGUMENT

**I. Because Mr. Felipe-Zavala experienced a complete deprivation of his right to confidential communication, he does not need to prove that the interference substantially prejudiced him.**

Mr. Felipe-Zavala was completely deprived of his Sixth Amendment right to confidential communication when—as the government does not dispute—his only opportunity to talk about his charges, rights, and

2

options with his attorney was in court. Because every conversation Mr. Felipe-Zavala had with his attorney took place in the open courtroom with others nearby, his Sixth Amendment right to confidential communication was violated. Furthermore, a total deprivation of that right, is reviewed for structural error, not harmless-error, because it is a right that "affec[ts] the framework within which the trial proceeds." *Arizona v. Fulminante*, 499 U.S. 279, 309-310 (1991).

## A. Mr. Felipe-Zavala experienced complete deprivation of his right to confidential communication with his attorney.

The government contends that Mr. Felipe-Zavala did not experience a complete deprivation of his right to confidential communication with his attorney. AAB-25. The government's assertion is incorrect for three reasons: (1) defense counsel took numerous steps to try to meet confidentially with Mr. Felipe-Zavala with no success; (2) the magistrate judge's offer for a continuance was an illusory solution; and (3) the mere presence of law enforcement violated Mr. Felipe Zavala's rights by chilling communication.

3

### i. Defense counsel took numerous unsuccessful steps to try to meet confidentially with her client.

First, the government argues that no Sixth Amendment violation occurred because defense counsel did not try hard enough to speak with her client confidentially. AAB-25. But that ignores the efforts defense counsel made to try to speak privately with her client.

The following actions were taken by defense counsel in an attempt to have the opportunity to speak privately with her client. First, once assigned the case, defense counsel made attempts to locate an interpreter to visit the jail with her, but no such interpreter was available. ER-15. Then, because defense counsel knew a cell phone would never be allowed in the jail, she requested to meet with her client in "the tank." "The tank" are the cells within the courthouse that, just like the jails, are operated by the United States Marshals Service (USMS). ER-20.

Defense counsel's hope was that even though cell phones are not allowed in the tank, an exception could be made for Mr. Felipe-Zavala and a Purépecha interpreter could assist via phone. No such exception was permitted. ER-20. When the magistrate judge asked defense counsel why she did not renew the request to meet with her client in the tank

4

with a cell phone, she shared that when she "made requests in the past in similar situations where we needed an interpreter that did not speak Spanish, [] those requests have been denied by the Marshals, and it's for safety reasons." ER-20.

Finally, after those multiple attempts to problem solve how to speak with her client, she contacted the judge's courtroom deputy to request that the courtroom be cleared. ER-19. At this point, defense counsel's only opportunity to meet with her client with a Purépecha interpreter was in court. *Id.* Defense counsel reached out to the courtroom deputy because contacting the court directly could be viewed as ex parte communication. The courtroom deputy cleared the courtroom of the public, but defense counsel was informed by a U.S. Marshal "that because [Mr. Felipe-Zavala] was being brought out of the cage that [law enforcement] would all need to be present still." ER-20.

When the government contends that defense counsel "at the very least" could have asked the court for relief, it ignores these many steps defense counsel took, including contacting the magistrate judge via his courtroom deputy. AAB-25. An experienced defense attorney used all the tools available to her based on her years of experience practicing in the

5

Southern District of California. She reached out to the interpreting department and the court, via the court's courtroom deputy—the only way to reach the court—and was told she could meet with her client in the courtroom. ER-22. Defense counsel was then told by the USMS that she could not meet with Mr. Felipe-Zavala alone because he was in custody. ER-20. She knew that a cellphone was never going to be permitted in the tank per USMS policy. ER-22. Bond was denied. ER-26. There was no other place to meet an in-custody client besides in court where law enforcement would always need to be present to watch the defendant. Defense counsel believed she had to "take it or leave it"—that the only opportunity she had to speak with her client was in the courtroom with USMS and BP agents present. ER-22.

Finally, the government is wrong to claim that Mr. Felipe-Zavala "had apparently met with counsel using the Purépecha interpreter before his initial appearance, without any claimed interference." AAB-13. It is true that defense counsel briefly "consulted" with her client with the Purépecha interpreter via relay interpretation before the initial appearance. ER-41. But it is not true that she did so "without any claimed interference." AAB-13. To the contrary, defense counsel explained at the

6

March 13 hearing that "the *only* opportunity that Mr. Felipe has had to meet with counsel has occurred in a courtroom that was not privileged, in that there were multiple Border Patrol agents and Marshals present during our conversations." ER-15-16 (emphasis added). As that statement makes clear, the consultation before the initial appearance occurred in open court, with law enforcement present—just like at the second hearing.

### ii. The magistrate judge's offer for a continuance was an illusory solution.

Next, the government claims that Mr. Felipe-Zavala's experience "does not reflect a 'complete deprivation' but instead a deliberate decision not to accept the opportunity for further private communication." AAB-25. The government argues that there was no deprivation because the magistrate judge gave Mr. Felipe-Zavala an opportunity to trail his matter to the end of the court's calendar. *Id.* The magistrate judge's proposed solution did not cure the problem because the magistrate judge only offered a continuance, he did not offer an opportunity for confidential communication.

Defense counsel made very clear what she needed for confidential communication: (1) privacy, and (2) phone access for relay interpretation. She told the judge in detail why she had failed to procure those things: She could meet privately at the jail or tank, but security measures prevented her from bringing in a cell phone. ER-20. She could bring a cell phone into court, but security measures prevented her from meeting privately. ER-19-20, ER-22-23.

Despite knowing exactly what defense counsel needed, the magistrate judge never offered to provide it for her. The magistrate judge never offered to let her meet privately in the courtroom, in contravention of the Marshals' security measures. Nor did the magistrate judge ever offer to order that she be allowed to take a cell phone into the tank or the jail, in contravention of those security measures.

Instead, all the magistrate judge offered was time. ER-23-24. The matter could be trailed until the end of the day, or else it could be continued to a later date. ER-21. But defense counsel did not need time. Time would not fix any of her problems. She needed a space where she had both privacy and phone access. And no amount of time could magic that into existence.

8

The magistrate judge also made a vague statement that a continuance would provide an "opportunity" to "ask for" some unspecified "special relief." ER-21. But defense counsel had made clear exactly what special relief she required in order to speak to her client (privacy and phone access), and the magistrate judge had not even suggested that that relief would be granted. ER-21, ER-23-24.

In fact, defense counsel did move for the only "special relief" that would have solved the problem: She asked that Mr. Felipe-Zavala be released on bail. ER-24-25. That would have been appropriate under 18 U.S.C. § 3142(i), which lets a judge order "temporary release . . . to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense[.]" But the magistrate judge rejected that out of hand. ER-26. By rejecting the only concrete solution to the problem, and offering Mr. Felipe-Zavala only additional time trapped incommunicado in custody, the magistrate judge failed to cure the complete deprivation of confidential communication.

9

### iii. The mere presence of law enforcement violated Mr. Felipe-Zavala's rights by chilling communication, and he therefore did not have to show that the officers intentionally listened in or conveyed information to the prosecutors.

Third, the government claims that Mr. Felipe-Zavala did not experience a "complete deprivation" of confidential communication because the record does not provide details such as how close law enforcement officials were to Mr. Felipe-Zavala, what law enforcement officials could and could not hear, and whether the interpreter was on speaker phone.[1] AAB-26.

The government's analysis here is misguided. The deprivation experienced by the defendant is not assessed from the perspective of law enforcement or the prosecutor.

Instead, the deprivation is assessed from the perspective of the criminal defendant because a main motivation behind the right to

---

[1] The government claims also that law enforcement "came and went" during Mr. Felipe-Zavala's meeting with defense counsel. AAB-4. This is incorrect. Defense counsel was never left alone with her client because Marshals' policy commanded law enforcement to be present when Mr. Felipe-Zavala was "brought out of the cage" to meet with his counsel in the courtroom. ER-20.

confidential communication is to prevent the chilling of communication between attorney and client. "[I]t takes no stretch of imagination to see how an inmate would be reluctant to confide in his lawyer about the facts of the crime, perhaps other crimes, possible plea bargains, and the intimate details of his own life and his family members' lives, if he knows that a guard is going to be privy to them, too." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017) (quoting *Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014)).

Mr. Felipe-Zavala was thus less likely to speak candidly to his attorney if he believed law enforcement was possibly overhearing his conversation—that holds true whether the officers in fact overheard him or not. Surely, the Sixth Amendment does not permit police to sit in on confidential client meetings, as the government suggests, so long as they promise not to listen.

Further, the government argues that Mr. Felipe-Zavala did not experience a complete deprivation because there is no evidence "that any Government agents overheard any attorney-client communication or, even if they did, that they passed it on to the prosecution." AAB-9; *see also* AAB-26. But this argument is conceptually confused. Though framed

11

as an argument about whether Mr. Felipe-Zavala suffered a complete deprivation, these points really go to prejudice. After all, the government is not denying that law enforcement sat in on confidential client meetings. Instead, the government is suggesting that the interference did not lead to an articulable negative result, like having confidential information passed to the prosecutor.

Such prejudice arguments are not relevant to whether the Sixth Amendment was violated in the first place. For example, the claimants in *Nordstrom v. Ryan* did not have to prove that their overread communications were provided to the prosecutor in order to make out a Sixth Amendment violation—the sheer act of reading their mail for a matter of seconds was deemed to violate the Sixth Amendment. 856 F.3d 1265, 1272 (9th Cir. 2017).

That matters because, as explained below, the complete deprivation of confidentiality here was structural error. By definition, defendants raising a structural error claim need only prove the constitutional violation, not prejudice. For example, denial of a defendant's right to his counsel of choices is structural error. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147-148 (2006). Thus, after proving that he was deprived

of his counsel of choice, a defendant need not also prove that his lawyer of choice would have done a better job for him; it is enough that choice of counsel is "regarded as the root meaning of the constitutional guarantee." *Id*. Because violation of the choice of counsel is deemed a complete deprivation of a fundamental right, structural error applies. So too here.

Finally, though the government's claims that law enforcement's interference was not intentional, AAB-10, those arguments are not supported by the facts or law. The Marshals did intentionally interfere with Mr. Felipe-Zavala's private communications. The Marshals intentionally stayed in the courtroom during a confidential client meeting. ER-19-20. And the Marshals intentionally barred counsel from bringing a telephonic interpreter into the tank, the only available private meeting space. ER-20.

Moreover, a Sixth Amendment violation can arise even when the government officials give security justifications for their interference. In *Nordstrom*, for example, jail staff claimed to be "reading the mail to establish the absence of contraband and ensure the content of the mail is of legal subject matter." *Nordstrom I*, 762 F.3d at 911. But even given the security reason, reading inmates' legal mail was deemed an intentional

13

violation of the Sixth Amendment. *Id.* Similarly, for Mr. Felipe-Zavala, the Marshals' actions were intentional, even though security reasons were the basis for his inability to meet with defense counsel privately. ER-20.

**B.   Because Mr. Felipe-Zavala experienced complete deprivation of his right to confidential communication with his attorney, structural error applies.**

Next, the government claims that even if Mr. Felipe-Zavala suffered a complete deprivation of counsel, that was not structural error. The government therefore asserts that Mr. Felipe-Zavala must demonstrate both deliberate interference with his confidential relationship with counsel and that the interference substantially prejudiced him.

Mr. Felipe-Zavala, on the other hand, contends that he does not need to show that such prejudice occurred because—when it comes to a *total* deprivation of confidential communications, rather than a partial deprivation—structural error applies. The parties' debate implicates an open question: this Court has never considered whether a complete deprivation of the right to confidential communication is structural error.

14

The parties disagree about which precedents this Court should look to for guidance in deciding that novel issue.

The government relies on four cases to support that prejudice analysis applies here. *See* AAB-24-25. Yet each of these cases involved partial—not complete—deprivation. The government cites to *Nordstrom* and *Williams*, both jailhouse monitoring cases where legal mail was reviewed or intercepted. *Nordstrom II*, 856 F.3d at 1271; *see also Nordstrom I*, 762 F.3d at 911; *Williams v. Woodford*, 384 F.3d 567, 584–85 (9th Cir. 2004). Neither case included a complete deprivation of confidential communication because both defendants had other means and opportunities to speak with their defense attorneys.

The government also cites to *United States v. Irwin* for the proposition that "not all police action which arguably could be called an interference with the attorney-client relationship is violative of those rights." 612 F.2d 1182, 1185 (9th Cir. 1980) (citing *Clutchette v. Rushen,* 770 F.2d 1469, 1471 (9th Cir. 1985)). In *Irwin,* the defendant repeatedly talked to, without the consent of his attorney, an undercover Drug Enforcement Administration agent who posed as a drug dealer and knew that Mr. Irwin had already been arrested. 612 F.2d at 1185. Mr. Irwin's

15

partial—and intentional on the part of the defendant—deprivation is hardly analogous to Mr. Felipe-Zavala's complete inability to speak privately with his attorney. Lastly, the government relies on *Weatherford v. Bursey* to reject "the per se rule . . . that [] trial prejudice to the defendant is deemed irrelevant." 429 U.S. 545, 552 (1977). As addressed in the opening brief, *Weatherford* is another example of a partial deprivation of the right to confidential communication. AOB-25.

None of the cases relied on by the government cite to analogous examples of *total* deprivation. That matters, because complete deprivations of Sixth Amendment rights are treated differently than partial deprivations. For example, courts distinguish between partial deprivations of the right to counsel during critical stages and total deprivations during critical stages. See *Strickland v. Washington*, 466 U.S. 668 (1984) (partial deprivations); *United States v. Cronic*, 466 U.S. 648, 659 (1984) (total deprivations). For partial deprivations, such as when defense counsel make specific errors rendering the attorney ineffective, the defendant must show prejudice. *Strickland*, 466 U.S. at 696.

16

In contrast, when counsel is either totally absent or prevented from assisting the accused during "a critical stage" of the proceeding, such total deprivations constitute structural error and the defendant need not show prejudice. Cronic, 466 U.S. at 659. This difference illustrates that, at least in the Sixth Amendment context, one cannot assume that the prejudice standard for partial deprivations also applies to total deprivations.

This Court must therefore look to other cases about complete deprivations of Sixth Amendment rights. A total deprivation of the right to counsel can arise when the defendant is deprived of a particular, critical aspect of the right to counsel.

For example, the deprivation of the right to hire counsel of one's choice where the defendant has the resources to do so is structural error. *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006). In *Gonzalez-Lopez*, the Supreme Court held that the court's refusal to permit Mr. Gonzalez-Lopez's attorney of choice to practice pro hac vice violated his Sixth Amendment right to paid counsel of his choosing. *Id.* at 150. This type of violation constitutes structural error because it has "never been derived from the Sixth Amendment's purpose of ensuring a fair trial." *Id.* at 147.

17

Instead, choice of counsel is "regarded as the root meaning of the constitutional guarantee." *Id.* at 147-148. In so holding, the Court clarified that determining the harmlessness of the error would be impossible because the error contaminated the very mechanism for measuring harmlessness: the structure of the trial itself. *Id.* at 148.

Likewise, in *Geders*, the Court held that the total denial of the defendant's conferral right during an overnight trial recess was structural error. *Geders v. United States*, 425 U.S. 80, 86 (1976). Because the defendant could not "consult[] his counsel 'about anything' during [the] 17-hour overnight recess," he did not need to show prejudice. *Geders*, 425 U.S. at 91.

The government completely fails to address *Gonzalez-Lopez*. Instead, the government focuses solely on *Geders*. Yet, the government claims that *Geders* is not analogous because the Supreme Court "cabined *Geders* to its facts" in *Perry*, 488 U.S. at 280, 284. AAB-28. But *Geders* is still very much good law. In 2009, this Court relied on *Geders* as an example of when prejudice need not apply because a Sixth Amendment violation occurred during a case's critical stage. *See Musladin v. Lamarque*, 555 F.3d 830, 839 (9th Cir. 2009). Additionally, other courts

18

have continued to cite to *Geders* for the proposition that an overnight ban on consultation during the defendant's testimony violated the defendant's Sixth Amendment right to counsel and constituted reversible error. *See Jones v. Vacco*, 126 F.3d 408, 416 (2d Cir. 1997).

The government also cites to *United States v. Sandoval-Mendoza* for the proposition that *Geders* "preceded many recent Supreme Court decisions requiring prejudice as well as constitutional error for reversal." 472 F.3d 645, 652 (9th Cir. 2006); AAB-28. But neither *Perry* nor *Sandoval-Mendoza* held that *Geders* was overruled. To the contrary, *Sandoval-Mendoza* pointed out that much more recent Supreme Court cases like *Gonzalez-Lopez* had continued to hold that "if an error is structural, prejudice is irrelevant." *Sandoval-Mendoza*, 472 F.3d at 652.

The Court in *Sandoval-Mendoza* then relied on *Geders* when it ruled that Mr. Sandoval-Mendoza's right to counsel was violated when he was prohibited from discussing certain topics of conversation—an expansion of *Geders*—during an overnight-recess meeting with his lawyer. *Id*. Other courts who squarely consider the matter have held that *Geders* and *Perry* are reconcilable, *see Serrano v. Fischer*, 412 F.3d 292, 299 (2d Cir. 2005) (Sotomayor, J.) (collecting cases), and courts have

19

continued to apply *Geders* and its structural error rule after *Perry*, *see, e.g.*, *Jones v. Vacco*, 126 F.3d at 417; *United States v. Cobb*, 905 F.2d 784, 792 (4th Cir. 1990).

Courts' continued adherence to *Geders* makes sense, because courts of appeals have no authority to overrule Supreme Court precedent. "[T]he fact that the Supreme Court has expressed some ambivalence about its own jurisprudence does not give [lower courts] the power to change it." *United States v. Grisel*, 488 F.3d 844, 847 (9th Cir. 2007), *abrogated on other grounds by United States v. Stitt*, 586 U.S. 27 (2018).

Like choice of counsel and the right to consult during trial, the right to confidential communication is central to the right to an attorney. And Mr. Felipe-Zavala experienced a total deprivation of that right when he was not given any opportunity to meet with his attorney in private. That violation is structural error demanding reversal.

## II. The government also deliberately and prejudicially interfered with Mr. Felipe-Zavala's ability to confer with his counsel and therefore his conferral rights were violated.

As explained in the opening brief, Mr. Felipe-Zavala's Sixth Amendment rights were violated in a second respect: His two rushed

meetings with his attorney violated his conferral rights. Because this was only a partial deprivation of his conferral rights (as opposed to the complete deprivation of his confidential communication right), Mr. Felipe-Zavala agrees that he must show prejudice. In a guilty plea case, prejudice arises when there is a reasonable probability the defendant would not have pled guilty absent the Sixth Amendment violation. *See Hill v. Lockhart*, 474 U.S. 52, 52 (1985). A reasonable probability is less than a preponderance. *Sikousis Legacy, Inc. v. B-Gas Ltd.*, 97 F.4th 622, 630 (9th Cir. 2024). And he can do so: there is at least a reasonable probability Mr. Felipe-Zavala would not have pled guilty with adequate conferral.

The government claims there was no deliberate interference of Mr. Felipe-Zavala's conferral rights and that he was not prejudiced. Additionally, the government specifically contends that Mr. Felipe-Zavala's failure to accept the magistrate judge's proposed remedy of a continuance further underscores there was no intentional interference. But the government's response repeatedly, misconstrues four crucial issues.

21

First, the government claims that defense counsel admitted there was not "anything more" that "should have been communicated." AAB-21 (citing ER-19). This misrepresents defense counsel's response a magistrate judge question.

The magistrate judge asked defense counsel: "Is there anything more that you feel should have been communicated between the client and attorney that was not communicated? Or did you nevertheless -- was everything covered, as far as you know?" ER-19. Defense counsel explained that she was able to inform her client of the rights he was giving up, but that her "concern falls more in line with the fact that because Mr. Felipe and I did not have a safe space to talk about things, I cannot know what he did or did not tell -- what he did not tell me or explain further." ER-19. Defense counsel then went on to explain the types of matters Mr. Felipe-Zavala may have discussed with her had law enforcement not been present. *Id.* So, when defense counsel stated there was not "anything more" that "should have been communicated" this was merely in reference to the magistrate judge's specific question. AAB-21 (citing ER-19).

Second, the government contends that Mr. Felipe-Zavala could not have pursued a duress or official restraint defense because he admitted he intended to be with his family, and because he admitted that he had the intent to enter without being detected, apprehended, or taken into custody. AAB-21-22.

But these answers cannot be taken at face value, because defense counsel did not have enough time to explain his various possible defenses to him. Mr. Felipe-Zavala very well may have admitted the elements of illegal entry because he did not really understand the differences in intents. He could have thought it was enough if he ultimately wanted to reunite with family, or if he simply wanted to reach United States soil without being detected, apprehended, or taken into custody even if he had the intent to turn himself in once he reached the United States. It is unlikely he would have made the same choices had he had actual time to talk through his various options with his counsel.

Thus, the government's analysis oversimplifies these issues. Mr. Felipe-Zavala could have run a duress defense rooted in seeking to escape persecution in Mexico. He could have gone to trial with a defense to attempted entry: his goal was to seek asylum.

23

Third, the government specifically insists that Mr. Felipe-Zavala's failure to accept the magistrate judge's proposed remedy to trail the matter to the end of the day shows that there was no intentional interference with his conferral right. AAB-23. As explained, however, the magistrate judge's offer was an illusory solution: Defense counsel could only use relay interpretation in the courtroom. But a courtroom cannot be cleared while other matters are ongoing and defense counsel could not do relay interpretation in the courtroom while court was in session.

Mr. Felipe-Zavala did not have a fair opportunity to confer for bail purposes. While he was incarcerated he could not speak with anyone for multiple days. He repeatedly stated, including on the record, that he was pleading guilty to get out of the difficult jail conditions. ER-31. So, considering the totality of the circumstances, a magistrate judge cannot cure the prejudice by ordering further delay while Mr. Felipe-Zavala remained in jail.

Lastly, contrary to the government's claims, the prejudice suffered by Mr. Felipe-Zavala was far from "speculative." AAB-9. Mr. Felipe-Zavala offered three concrete types of prejudice and based each one on facts in the record. Mr. Felipe-Zavala was stripped of his ability to

24

privately talk with his counsel about possible defenses, including a duress defense. ER-16. He was stripped of his ability to provide surety information for the opportunity to be released on bond. ER-15-16, 24-26. And he was stripped of asking further questions about asylum. ER-15-16. The prejudice here is that Mr. Felipe-Zavala may very well of chosen to fight his case, and not pleaded guilty, had he been offered the opportunity to speak privately with his attorney about imperative issues such as bond and possible defenses to trial.

The government ignores that one quick consultation prior to the initial appearance and one one-hour, in-court conferral were too rushed for Mr. Felipe-Zavala and his attorney to fully discuss the case. The limitations imposed by the jail and the Marshals infringed on Mr. Felipe-Zavala's Sixth Amendment conferral right because they prevented him from fully discussing his case with counsel. Therefore, the magistrate judge reversibly erred by denying defense counsel's motion to dismiss for violation of Mr. Felipe-Zavala's conferral rights.

## CONCLUSION

For all of these reasons, this Court must vacate Mr. Felipe-Zavala's conviction.

Respectfully submitted,

DATED: February 7, 2025     *s/Nora L. Stephens*
Nora L. Stephens
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101
619.234.8467
Nora_Stephens@fd.org

Attorneys for Mr. Felipe-Zavala

## CERTIFICATE OF COMPLIANCE

This brief contains 4,668 words, excluding the items exempted by Fed. R. App. P. 32(f) and including words that appear in pictures. This brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6). I certify that this brief complies with the word limit of 9th Cir. Rule 32-1.

Respectfully submitted,

DATED: February 7, 2025

*s/Nora L. Stephens*
Nora L. Stephens
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101
619.234.8467
Nora_Stephens@fd.org

Attorneys for Mr. Felipe-Zavala

27