**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 18 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff - Appellee, v. FELICIANO FELIPE-ZAVALA, Defendant - Appellant. | No. 23-2840 D.C. No. 3:20-mj-20580-MJS-WQH-1 MEMORANDUM* |

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted March 7, 2025
Pasadena, California

Before: SANCHEZ and H.A. THOMAS, Circuit Judges, and DONATO, District Judge.**
Concurrence by Judge DONATO.

Feliciano Felipe-Zavala appeals the district court's judgment of conviction, by guilty plea, for misdemeanor illegal entry under 8 U.S.C. § 1325(a)(1). Felipe-

---

   *  This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

   **  The Honorable James Donato, United States District Judge for the Northern District of California, sitting by designation.

Zavala asserts that his Sixth Amendment rights to conferral and confidential communication with counsel were violated because he was able to communicate with his attorney only in the presence of law enforcement officers and that communication lasted for only an hour through time-intensive relay translation. We review Sixth Amendment claims de novo. *United States v. Martinez*, 850 F.3d 1097, 1100 (9th Cir. 2017). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Felipe-Zavala argues that a defendant's right to the assistance of his counsel is violated "when (1) 'the government deliberately interferes with the confidential relationship between a criminal defendant and defense counsel,' and (2) the interference 'substantially prejudices the criminal defendant.'" *Nordstrom v. Ryan* (*Nordstrom II*), 856 F.3d 1265, 1271 (9th Cir. 2017) (citing *Nordstrom v. Ryan* (*Nordstrom I*), 762 F.3d 903, 910 (9th Cir. 2014)).

The record here does not substantiate Felipe-Zavala's assertion that the government deliberately interfered with his confidential communication or conferral rights. Felipe-Zavala references U.S. Marshals Service policies that allegedly prohibit the use of cell phones in the jail or in "the tank" and require the presence of law enforcement in the courtroom. Felipe-Zavala contends that he was effectively deprived of the opportunity to communicate confidentially with his counsel because of these policies. However, Felipe-Zavala does not offer these

2                                                        23-2840

policies for the court's review, nor does he show how they demonstrate "deliberate interference" by the government. Instead, the record shows only that it was Felipe-Zavala's counsel's belief that these policies would render futile additional steps to request more time and ensure confidentiality.

The hearing transcript reflects that both the prosecution and the court were previously unaware of the problems Felipe-Zavala raised at his hearing. Once apprised of these translation and confidentiality issues, the magistrate judge offered to continue the case several times to give Felipe-Zavala's counsel more time to "do more" under "circumstances in which [Felipe-Zavala's counsel] deem[s] and the court deems appropriate." The record shows, at most, passive government involvement in the issues Felipe-Zavala faced, which is insufficient to demonstrate deliberate interference. *Cf. Weatherford v. Bursey*, 429 U.S. 545, 557 (1977).

Felipe-Zavala has similarly not demonstrated the requisite substantial prejudice. Felipe-Zavala asserts that he need not show prejudice regarding his claim because the deprivation of his right to confidential communication amounted to structural error. Structural errors are "rare," *United States v. Knight*, 56 F.4th 1231, 1235 (9th Cir. 2023), and where "the defendant had counsel and was tried by an impartial adjudicator," there is a "strong presumption" that other constitutional errors are not structural and therefore subject to harmless error review. *Id.* (quoting *Neder v. United States*, 527 U.S. 1, 8 (1999)). Here, Felipe-Zavala was

provided counsel, an interpreter, and several opportunities to have additional time to confer privately with his attorney. Because the facts of this case differ significantly from those where structural errors have been found, Felipe-Zavala does not overcome this "strong presumption." *Id*.

"Substantial prejudice results from the introduction of evidence gained through the interference against the defendant at trial, from the prosecution's use of confidential information pertaining to defense plans and strategy, and from other actions designed to give the prosecution an unfair advantage at trial." *Williams v. Woodford*, 384 F.3d 567, 585 (9th Cir. 2004) (citing *United States v. Irwin*, 612 F.2d 1182, 1187 (9th Cir. 1980)). Although Felipe-Zavala pled, rather than going to trial, no analogous circumstances of prosecutorial advantage have been demonstrated here. Rather, the record reflects that the magistrate judge offered to continue the hearing, but Felipe-Zavala instead asked to enter a guilty plea. On this record, Felipe-Zavala has not demonstrated the requisite prejudice to succeed on his Sixth Amendment claims.

Although Felipe-Zavala has not demonstrated a violation of his Sixth Amendment rights, the magistrate judge's cursory treatment of serious questions regarding Felipe-Zavala's ability to speak privately with his counsel is concerning. It bears repeating that the right to counsel "is a fundamental component of our criminal justice system," *United States v. Cronic*, 466 U.S. 648, 653 (1984), and

"the right to privately confer with counsel is nearly sacrosanct." *Nordstrom I*, 762 F.3d at 910. An alleged violation of this right warrants a thorough inquiry into the factual circumstances underlying this claim and the proactive use of the remedial tools available to judges to ensure that conferral rights and confidential communication are safeguarded.

**AFFIRMED.**

FILED

APR 18 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*United States v. Felipe-Zavala*, No. 23-2840

DONATO, District Judge, concurring:

Defendant Feliciano Felipe-Zavala is a native speaker of Purépecha, a rare language of an indigenous people in Mexico. He does not speak Spanish, and so his communications with his attorney required a relay interpretation from Purépecha to Spanish, and Spanish to English. Because the only available Purépecha-to-Spanish interpreters resided in Mexico, the Purépecha-to-Spanish portion of the relay interpretation needed to occur over the phone. Because telephones were not permitted at the jail where Felipe-Zavala was in custody or in the U.S. Marshals' holding area in the courthouse, Felipe-Zavala was able to communicate with his appointed counsel only in the courtroom. And because Felipe-Zavala was an in-custody defendant, deputy marshals and border patrol agents were present in the courtroom the entire time he was talking with his lawyer. On top of all that, Felipe-Zavala had just one hour or so in total to talk with his lawyer.

All of this raises serious concerns about whether Felipe-Zavala had a full and fair opportunity to privately confer with his attorney about his criminal defense, a right we have aptly described as "nearly sacrosanct." *Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014) (citation omitted). I concur in the majority disposition because Felipe-Zavala's arguments and the record before the Court do

1

not support a different outcome. I write separately to state my views about the boundaries of our decision, and to highlight a lesson drawn from the district court's conduct.

To start, I do not view the *Nordstrom* decisions as necessarily the final word on a criminal defendant's right under the Sixth Amendment to confidential communication with a lawyer when challenging a conviction. The *Nordstrom* case was a civil case brought under 42 U.S.C. § 1983 that concerned an Arizona state prison practice of allowing prison guards to open and read inmate mail to lawyers to establish the absence of contraband and ensure the content of the mail was legal in nature. *Nordstrom v. Ryan (Nordstrom I)*, 762 F.3d 903 (9th Cir. 2014); *Nordstrom v. Ryan (Nordstrom II)*, 856 F.3d 1265 (9th Cir. 2017). In this context, the original panel found it "obvious" that "a policy or practice permitting prison officials to not just inspect or scan, but to *read* an inmate's letters to his counsel is highly likely to inhibit the sort of candid communications that the right to counsel and the attorney-client privilege are meant to protect." *Nordstrom I* at 910 (emphasis in original). The panel concluded that the plaintiff had stated a civil rights claim for a violation of the Sixth Amendment. *See id.* at 911. *Nordstrom II* reversed the district court's subsequent dismissal of the Sixth Amendment claim, holding that the Arizona Department of Corrections' "'inspection' policy does not satisfy the standard articulated in . . . *Nordstrom I*" nor "satisfy the four-part test

2

identified in *Turner v. Safley*, 482 U.S. 78, 89–91 (1987)." *Nordstrom II*, 856 F.3d at 1268.[1]

This case is different from *Nordstrom*. It entails a challenge to a conviction based on an alleged intrusion into the attorney-client relationship and communications, a circumstance which both *Nordstrom* panels took pains to distinguish. *See Nordstrom I*, 762 F.3d at 911 (stating what the panel would have considered "[w]ere Nordstrom challenging a conviction following an improper intrusion into the attorney-client relationship"); *Nordstrom II*, 856 F.3d at 1269 (noting case "did not arise from alleged prejudice that [Nordstrom] suffered related to his conviction").

In addition, the alleged deprivation here of the Sixth Amendment right to communicate confidentially with an attorney arose from starkly different causes. In *Nordstrom*, a prison guard read the plaintiff's letter to his counsel and the Arizona Department of Corrections affirmatively defended that practice. *Nordstrom I*, 762 F.3d at 905–07. Here, the allegation is not that law enforcement officers actively tried to listen in on Felipe-Zavala's communications with his counsel, but that an unusual set of circumstances -- the need for relay interpretation, a portion of which had to occur over the phone; a policy that barred

---

[1] The four-part test in *Turner* goes to the reasonableness of prison regulations which are alleged to impinge on inmates' constitutional rights. 482 U.S. at 90.

3

use of a phone in the jail or in the holding cell; and the restraint on Felipe-Zavala's ability to be outside of law enforcement presence in the courtroom -- combined to create a situation where Felipe-Zavala arguably had a constitutionally insufficient opportunity to communicate with his counsel privately prior to pleading guilty.

Felipe-Zavala himself fully and repeatedly embraced the deliberate interference and prejudice standard stated in the *Nordstrom* cases, and our decision today correctly concludes that standard is not met on this record. But I do not read our decision to decide that the *Nordstrom* standard is, in fact, the correct standard to evaluate confidential-communication claims under the Sixth Amendment on direct appeal from a judgment of conviction. Nor do I read our decision to suggest that, if a defendant advanced a different argument more directly grounded in the text of the Constitution, he or she could not succeed on appeal with a record like this one. The Sixth Amendment plainly states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. This guarantee has little substance if it does not safeguard a criminal defendant's right to communicate with a lawyer privately and outside the presence of government agents, with fair accommodation of linguistic barriers and time. *See United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006). If similar circumstances arise again in the future, a criminal defendant seeking to set aside a conviction may be well advised to make the case that a defendant need not

4

demonstrate deliberate interference by the government which substantially prejudiced his defense.

Some cautionary lessons can also be drawn from the conduct of the district court. I agree with the majority that the district court was by no means cavalier with respect to Felipe-Zavala's situation. Even so, it should have done more to provide him with a secure setting to talk with his lawyer privately, with relay interpretation, free of the presence of government agents or other third parties. The better practice would have been to order a short continuance of the proceedings to ensure the integrity of those communications, irrespective of Felipe-Zavala's comments on the fly during a hearing. A little extra effort along these lines would have made all the difference with respect to the right to counsel.

Consequently, although I concur on the record before us that Felipe-Zavala has not shown a reversible error, I conclude that further development of the right to private communication with counsel may be warranted in the context of a post-conviction appeal.

5